Richard Max STRAHAN, Plaintiff,

v.

Rear Admiral John L. LINNON, Commander First District, United States Coast Guard; Admiral Robert E. Kramek, Commandant, United States Coast Guard; Michael Kantor, Secretary, United States Department of Commerce; D. James Baker, Administrator, National Oceanic and Atmospheric Administration; and Roland Schmitten, Assistant Administrator, National Marine Fisheries Service, Defendants.

Civil Action No. 94–11128–DPW.

United States District Court,
D. Massachusetts.

May 20, 1997.

---

Richard D. Belin, Wendy B. Jacobs, Jonathan M. Ettinger, Adam Kahn, Foley, Hoag & Eliot, Boston, MA, for Richard Max Strahan.

Richard Max Strahan, Boston, MA, pro se.

Elinor Colbourn, Teri R. Thomsen, John L. Marshall, U.S. Dept. of Justice, Environmental and Natural Resources Div., Wildlife & Marine Resources Section, Washington, DC, George B. Henderson, U.S. Atty's Office, Boston MA, Edward A. Boling, U.S. Dept. of Justice, Environment & Natural Resources Div., Washington, DC, for Rear Admiral John L. Linnon, Admiral William J. Kime.

Ansel B. Chaplin, Anne Kenney Chaplin, Chaplin & Milstein, Boston, MA, for Center for Coastal Studies.

Edward A. Boling, U.S. Dept. of Justice, Environment & Natural Resources Div., Washington, DC, for Admiral Robert E. Kramek, Michael Kantor, D. James Baker, Roland Schmitten.

*MEMORANDUM AND ORDERS RE-
GARDING MOTION TO STRIKE
AND MOTION TO LIMIT SCOPE OF
REVIEW*

WOODLOCK, District Judge.

In connection with the motions for summary judgment filed by the parties, the defendants in this action filed a motion to strike and a motion to limit the scope of review to the administrative record. Specifically, the defendants oppose consideration of certain extra-record material. In this Memorandum, I detail my disposition of those motions.

■ A court reviewing agency action under the ESA, the MMPA, or NEPA must apply the standards set forth in the Administrative Procedure Act. *See Animal Defense Council v. Hodel,* 840 F.2d 1432, 1436 (9th Cir.1988), *amended,* 867 F.2d 1244 (9th Cir. 1989); *Friends of Endangered Species v. Jantzen,* 760 F.2d 976, 980 (9th Cir.1985). Typically, this review is limited to the record before the agency at the time the initial decision was made. *See Valley Citizens for a Safe Environment v. Aldridge,* 886 F.2d 458, 460 (1st Cir.1989); *Apex Construction Co., Inc. v. United States,* 719 F.Supp. 1144, 1146–47 (D.Mass.1989). Indeed, the Supreme Court has instructed that "the focal point for judicial review should be the administrative record already in existence, not some new record made initially in the reviewing Court." *Camp v. Pitts,* 411 U.S. 138, 142, 93 S.Ct. 1241, 1244, 36 L.Ed.2d 106 (1973). Nevertheless, "[t]he fact that review sometimes or often focuses on the initial administrative record does not mean it must, or always, will do so." *Valley Citizens for a Safe Environment,* 886 F.2d at 460.

■ Among the circumstances in which a reviewing court may consider evidence outside the administrative record are when "a plaintiff specifically alleges bad faith and provides a reasonable factual basis for that contention." *Apex Construction,* 719 F.Supp. at 1147 (citing *Citizens to Preserve Overton Park v. Volpe,* 401 U.S. 402, 420, 91 S.Ct.

814, 825–26, 28 L.Ed.2d 136 (1971)).[1] Courts have also "recognized an exception when evidence either confirming or denying agency predictions made in the original decision subsequently becomes available." *Conservation Law Foundation of New England, Inc. v. Clark,* 590 F.Supp. 1467, 1475 (D.Mass.1984). In addition, courts may consider extra-record evidence "to show factors that the agency should have considered, but did not." *Id.* Courts may also consider evidence outside the original agency record "to explain an unclear or technical record." *Id. See also Valley Citizens for a Safe Environment,* 886 F.2d at 460 ("a reviewing court might want additional testimony by experts, simply to help it understand matters in the agency record.").

Recognizing that the consideration of any additional material falling within the circumstances discussed above is wholly discretionary with the court, *id.,* I will take up the defendants' objections with respect to each of the disputed documents in turn.

■ 1. **Ettinger Aff., Exh. 8: Excerpts from deposition of Charles Mayo**—In his deposition, Dr. Charles Mayo articulates his belief that the Right whale population is, most likely, declining. The plaintiff attempts to characterize this information as a "factor[ ] that the agency should have considered, but did not." *Conservation Law Foundation,* 590 F.Supp. at 1475. I do not accept this characterization for two reasons. First, Mayo's statement about the population is very ambiguous. He states that the population is declining but then explicitly retracts that assertion. Moreover, it is unclear exactly what Dr. Mayo said to NMFS and Coast Guard officials who were preparing the biological opinions and the environmental impact statement. I would be more likely to admit such evidence under the rubric of evidence that "confirm[s] or den[ies] agency predictions made in the original decision," *id.,* because the 1996 Biological Opinion states that "[i]t is likely that the new population estimate will show a declining popula-

---

**1.** The burden on the plaintiff asserting such abuse is heavy. Courts "require a strong showing of bad faith or improper behavior before ordering the supplementation of the administra-

tive record." *Town of Norfolk and Town of Walpole v. U.S. Army Corps of Engineers,* 968 F.2d 1438, 1458–59 (1st Cir.1992).

tion." 1996 BO, at x, FEIS, Exh., F. In any event, I do not find Dr. Mayo's statements probative of the issues presented in this action, nor do they reveal any perspective not already in the record. Accordingly, I decline to expand the record to include consideration of this testimony.

■ **2. Ettinger Aff., Exh. 10: Affidavit of Philip Saunders** [2]—Dr. Saunders earned a Ph. D. in Economics in 1965 from the London School of Economics. In his affidavit, Dr. Saunders applied a "five-year-rule" [3] to the data contained in the Photo Identification Catalogue Database ("the Database") used by NMFS, and concluded that 267 Right whales were still alive. The defendants argue that this extra-record evidence is not admissible because Dr. Saunders has no expertise in marine biology or population dynamics and because his analysis does not take into account the changes in NMFS's sighting efforts. On the other hand, the plaintiff asserts that Dr. Saunders' affidavit merely explains the data contained in the Database and that it is admissible for that reason. Again, I do not find the precise number of Right whales particularly relevant to the analysis before me. I find from the evidence in the record that the Right whale population is exceedingly small; so small that the Right whale is considered endangered. Of course, this is stating the obvious, and this case would not exist if the Right whale population was large, or even adequate. But, I find that the precise number of whales as calculated by Dr. Saunders' methodology would not influence the analysis in this case. I decline to permit this evidence to be considered part of the record.

■ **3. Ettinger Aff., Exh. 16: Affidavit of Daniel Morast** [4]—Daniel Morast is President of the International Wildlife Coalition, an organization that, among other things, keeps photographs of human-whale interactions. Morast's affidavit contains such photographs depicting whales entangled in fishing gear, as well as explanatory text. Again,

I do not find this information relevant because it is conceded by all parties that many whale mortalities are caused by human-whale interactions. This is not an issue in this case. Accordingly, I decline to have the evidence contained in Exhibit 16 considered part of the record.

■ **4. Ettinger Aff., Exh. 24: Excerpts from Payne Depo.**—Philip Michael Payne is the head of NMFS's Office of Protected Resources. The excerpts from Payne's deposition provide information concerning the status of NMFS's Recovery Plans for federally protected whales other than the Right and Humpback whales, and also information about the data used to compile the 1995 and 1996 Biological Opinions. For purposes of the recovery plans, I find the deposition inadmissible because I have determined that the timing for development of such plans is discretionary. For purposes of evaluating the sufficiency of the data in the biological opinions, however, I find Payne's deposition pertinent and I have considered it in my analysis.

■ **5. Ettinger Aff., Exh. 26: Excerpts from Kraus Depo.**—Scott Kraus is a scientist at the New England Aquarium involved in Right whale research. In his deposition, Kraus maintains the Right Whale Catalog, a photo identification system used by NMFS to keep track of the Right whale population. The plaintiff asserts that Kraus's deposition testimony falls within the "data the agency should have considered, but did not" exception. I will allow Kraus's deposition testimony to be considered for this purpose, although I conclude that the information provided therein does not reveal that the Coast Guard or NMFS ignored any pertinent data while compiling the biological opinions and the environmental impact statements. Because I have considered such information, however, I will deny the defendants' motion to strike with respect to this material.

---

**2.** Both parties refer to this affidavit as Exh. 11, although it appears as Exh. 10 to the Ettinger Affidavit.

**3.** This "five year rule" assumes that if a whale is not sighted in five successive calendar years, that whale is dead.

**4.** Cited by parties as Exh. 17.

■ 6. **Ettinger Aff., Exh. 30: Excerpts from Machiarella Depo.**—John S. Machiarella is a Coast Guard employee who was on board the Cutter *Reliance* when it collided with a Humpback whale in 1995. Machiarella's deposition testimony relates the circumstances surrounding the collision as well as the physical characteristics of the whale that Machiarella observed. I do not find that this evidence fits within any recognized exception to the rule that a reviewing court may not consider extra-record evidence. Moreover, I do not find it helpful in my analysis of the issues in this case. I decline to permit it to be part of the record.

■ 7. **Ettinger Aff., Exh. 31: Excerpts from Julich Depo.**—Terrence Julich was the Commander of the Cutter *Reliance* at the time it struck a Humpback whale in 1995. To the extent that Julich's deposition describes the circumstances surrounding the *Reliance*'s collision with the whale, I will not consider it for the same reasons that I will not consider the Machiarella deposition. I will, however, consider Julich's deposition testimony inasmuch as it provides information about the appropriate speed-limit for Coast Guard cutters operating in known Right whale habitat. Although only loosely, Julich's opinion about appropriate speeds arguably falls into the "factors that the agency should have considered, but did not" exception to the no extra-record evidence rule. Specifically, it suggests that NMFS should have consulted with Coast Guard employees before issuing the "slow, safe speed" recommendation in order to get a more precise idea of how that requirement would be interpreted. I consider Julich's deposition for those purposes only.

■ 8. **Ettinger Aff., Exh. 33: Excerpts from Rooth Depo.**—Commander Richard Rooth of the United States Coast Guard provides information in his deposition concerning a wide variety of subjects, from the Coast Guard's understanding of the "slow, safe speed" requirement to the Coast Guard's conservation efforts, to the data used to prepare the Coast Guard's Environmental Assessment. Although I do not find any of this information adds materially to information already of record, I will not exclude it because Rooth's testimony is relevant for purposes of evaluating the adequacy of the Coast Guard's adoption of the Reasonable and Prudent Alternative promulgated by the 1996 Biological Opinion.

■ 9. **Ettinger Aff., Exh. 71: Excerpts from Beach Depo.**—Douglas W. Beach was a member of the Right Whale Recovery Team, Chairman of the Right Whale Recovery Plan Implementation Team, and is currently the protected species coordinator for NMFS. In his deposition testimony, Beach addresses, individually, each sub-part of the Right Whale Recovery Plan and describes the actions that have been taken to implement the Plan. Most of Mr. Beach's deposition is devoted to explaining how the Plan has been implemented and explaining the priorities that NMFS has established for the implementation process. I will not exclude this evidence because there is no administrative record concerning the implementation of the Plan and Mr. Beach's testimony "aid[s] [the Court's] ... understanding" of technical aspects of Coast Guard and NMFS activities concerning implementation.

■ 10. **Supp. Ettinger Aff., Exh. A: Affidavit of David N. Wiley**—David N. Wiley is a scientist for the International Wildlife Coalition and was a member of NMFS's Large Whale Take Reduction Team. His affidavit states that the TRT was not able to reach consensus and that the Draft TRT was not intended to be a complete compilation of recommendations. I find that this information is repetitive of the Draft TRT itself and adds nothing to my analysis. Accordingly, I decline to expand the record to include Exhibit A.

■ 11. **Supp. Ettinger Aff., Exh. E: Excerpts from Payne Depo.**—As noted, Mr. Payne is the head of NMFS's Office of Protected Resources. The plaintiff argues that this deposition testimony should be included because it demonstrates that the biological opinion is "final agency action" under the APA. Because I have already determined, in accordance with *Bennett v. Spear*, —— U.S. ——, ——, 117 S.Ct. 1154, 1158, 137 L.Ed.2d 281 (1997), the biological opinions at issue

are final agency action, the evidence is redundant. The plaintiff also asserts that the deposition testimony demonstrates that the defendants have not implemented the Humpback Whale Recovery Plan. I will not strike the testimony concerning implementation, although I note that I do not find the testimony is particularly enlightening on this issue.

 12. **Supp. Ettinger Aff., Exh. H: Aff. of Robert D. Stevenson, Ph. D.**—Dr. Stevenson is a conservation biologist at the University of Massachusetts. It is largely through his affidavit that the plaintiff supports his allegations that NMFS did not use the best scientific and commercial data as required by the ESA. The defendants claim that this affidavit is a "new record prepared in anticipation of litigation," and therefore should not be considered by this Court. *Bays' Legal Fund v. Browner*, 828 F.Supp. 102, 107 (D.Mass.1993). Dr. Stevenson's affidavit, however, explains different scientific procedures that the plaintiff asserts should have been utilized in the biological opinions. I find that the affidavit, therefore, falls under the exception providing that courts may consider extra-record evidence "to show factors that the agency should have considered, but did not." *Conservation Law Foundation,* 590 F.Supp. at 1475. I also find that the affidavit explains technical, scientific procedures and so falls within that exception as well. *See Valley Citizens for a Safe Environment,* 886 F.2d at 460. Accordingly, I have considered the information provided in Dr. Stevenson's affidavit in my analysis.

13. **Supp. Ettinger Aff., Exh I: Summary Chart**—This chart, prepared by plaintiff's counsel summarizes the references in the Beach deposition to the implementation of the Recovery Plan. For the same reasons that I have considered the Beach Affidavit, I have also considered this chart.

14. **Plaintiff's Reply, Exh. A: Population Report by Richard Max Strahan[5]**—The plaintiff asserts that Strahan sent this information to NMFS as evidence that the Right whale population was declining. The report itself is not dated. Moreover, the 1996 Biological Opinion assumes that the Right whale population is declining. Accordingly, as with the Mayo deposition testimony, item 1 *supra,* I find this report to be immaterial and I decline to treat it as part of the record.

15. **Plaintiff's Reply, Exh. C: Excerpts from Rooth Depo.[6]**—This deposition testimony concerns whether the whale hit by the Cutter *Reliance* was a Humpback. There is no genuine dispute over this issue. There is no need for this testimony to be part of the record.

---

5. Mislabeled by the defendants as Exhibit B.

6. Mislabeled by both parties as Exhibit D.